IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. DANIEL GONZALEZ, JR.

**Appeal from the Circuit Court for Blount County**
**Nos. C-17425; C-17840; C-17850      David Reed Duggan, Judge**

**No. E2009-01863-CCA-R3-CD - Filed January 12, 2011**

The Defendant, Daniel Gonzalez, Jr., appeals the Blount County Circuit Court's order revoking his community corrections sentences for three convictions for promotion of methamphetamine manufacture, a Class D felony, and two convictions for possession of drug paraphernalia, a Class A misdemeanor, and ordering the Defendant to serve the remainder of his effective six-year sentence in confinement. He contends that the trial court erred by ordering him to serve the remainder of his sentences in confinement. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal), and Mack Garner, District Public Defender (at trial), for the appellant, Daniel Gonzalez, Jr.

Robert E. Cooper, Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Mike Flynn, District Attorney General; and Kathy Aslinger, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant pled guilty to promotion of methamphetamine manufacture and possession of drug paraphernalia in case number C-17425, to promotion of methamphetamine manufacture in case number C-17840, and to promotion of methamphetamine manufacture and possession of drug paraphernalia in case number C-17850. The trial court sentenced him to three years in the Department of Correction for each promotion of methamphetamine manufacture conviction and to eleven months and twenty-

nine days in the county jail for each possession of drug paraphernalia conviction. The trial court ordered the sentences in case number C-17840 and C-17850 to run concurrently with each other but consecutively to the sentences in case number C-17425, for an effective six-year sentence. The trial court ordered the Defendant to serve the sentences in the community corrections program, with the condition that he enter and complete the Davidson County Drug Court Program. On July 7, 2009, the Defendant's supervisor in the community corrections program, Brian Hensley, filed a community corrections violation report alleging that the Defendant failed to complete the drug court program and that he threatened to commit suicide and hurt staff members.

At the revocation hearing, Mr. Hensley testified that the Defendant was discharged from the drug court program for non-compliance because he threatened to hurt himself and staff members. The Defendant stipulated to the admissibility of a letter from the drug court dismissing him from the program. The letter stated that the Defendant violated the conditions of the drug court program by showing negative and aggressive behavior and threatening to hurt himself and others on several occasions. The letter also stated that the Defendant was considered "treatment resistant." An affidavit accompanying the letter stated that the Defendant told program employees that he wanted to be transferred back to Blount County because he did not think the program was suited for him.

On cross-examination, Mr. Hensley agreed that he had not interviewed the Defendant and that he did not know the extent of the Defendant's drug addiction or psychological problems. He agreed that he did not personally witness any of the Defendant's behavioral problems in the drug court program.

The Defendant testified that he met with the doctor at the drug court facility to discuss the prescriptions that he was taking, including a medication for Parkinson's disease. He said the doctor told him the program would not have accepted him had they known he suffered from Parkinson's disease because the program did not offer the services and medications needed to treat the disease. He said that he did not have health insurance and that his medication was too expensive for the program to provide. He said that he was given a different medication to treat his Parkinson's disease and that the new medication caused him to hallucinate and hear voices. He said he was sent to the Crisis Stabilization Unit, an emergency program designed to stabilize patients, and his medications were changed. He said that he returned to the drug court program and that his medications were changed a third time. He said he experienced severe depression and was diagnosed with bipolar disorder, obsessive-compulsive disorder, and post-traumatic stress disorder. He said his medications were changed again.

The Defendant testified that his doctor told the residents not to confront him until he was stabilized on his medication. He said a resident ignored the doctor's orders and made the Defendant the subject of a confrontation therapy session, where he was yelled at and not permitted to defend himself. He said that the confrontation upset him and that he met with his doctor to discuss his anger and his "bad thoughts" about hurting the resident. He said the doctor referred him to a social worker for mental health treatment and told him to be honest with the social worker. He said that the social worker asked him how he was feeling and that he responded by telling the social worker that the resident embarrassed him and that he wanted to hurt the resident "really badly." He said the social worker placed him in the Crisis Stabilization Unit. Upon his release, he was transferred to the Blount County Jail.

The Defendant testified that he never acted on his bad thoughts. He said he never threatened to hurt other residents or staff members. He agreed that he had no violent incidents in the Blount County Jail. He said that he had not used crystal methamphetamine in seven months and that he and his son were attending Narcotics Anonymous meetings to help control their addictions. He said the doctors at the drug court program changed his medication too often and prevented him from becoming stable. He said that his current medication was working and that he no longer heard voices.

On cross-examination, the Defendant testified that a person from the drug court program interviewed him before he began the program. He said he told the person what medications he was taking and that he had Parkinson's disease. He said that although he previously had medical insurance that paid for his medications, his insurance coverage ended about two months before he entered the drug court program. He said he was without medication during that time. He denied telling drug court personnel that the program was not suited for him. He admitted he had a problem with methamphetamine, but he said he wanted help treating his addiction. He said that he wanted to complete the drug court program and that he needed to be on stable medication to do so. He admitted he used methamphetamine with his disabled son but said he did not introduce his son to methamphetamine. He agreed that he injected his son with methamphetamine because his son was not physically able to inject himself. He said that medical records establishing his mental illness were transferred to Blount County and that he received medication while incarcerated.

The trial court found that the Defendant committed a material violation of the terms of his community corrections sentences by failing to complete the drug court program. The trial court found that the Defendant needed mental health treatment and that the Defendant threatened to hurt himself or others in the program. The trial court revoked the Defendant's community corrections sentences, ordered him to serve the remainder of his sentences in

confinement, and requested that he be placed in the Department of Correction's Special Needs Unit to receive medical treatment.

A trial court may revoke a suspended sentence upon its finding by a preponderance of the evidence that a violation of the conditions of release has occurred. T.C.A. § 40-35-311(e) (2010) (probation revocation); see T.C.A. § 40-36-106(e)(3)(B) (2010) (stating that community correction revocation proceedings shall be conducted pursuant to T.C.A. § 40-35-311). A trial court, upon revoking a community corrections sentence, "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed . . . ." T.C.A. § 40-36-106(e)(4). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981).

The evidence was undisputed that the Defendant was dismissed from the drug court program because of his behavior. Completion of the program was a requirement of his community corrections sentences. As a result, the trial court did not abuse its discretion by revoking the Defendant's community corrections sentences.

During the revocation hearing, the prosecutor told the trial court that the drug court program was the best option the State had for treating methamphetamine addicts and that the State had no other programs to treat the Defendant's addiction. She also told the court that due to the Defendant's mental health issues, the Defendant did not appear to be able to succeed at any community-based program the State could offer. Defense counsel sought a return to community corrections after the Defendant's medications and mental health issues were stabilized, but he agreed that the Defendant would not be able to complete any community-based program unless his medications were properly adjusted. In light of the Defendant's threats to hurt himself or others, his drug addiction and mental health issues, and the lack of treatment options available in the community, we hold that the trial court did not abuse its discretion by ordering the Defendant to serve the remainder of his sentences in confinement and requesting that he be placed in the Department of Correction's Special Needs Unit where he could receive medical treatment.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

-4-